GENEVIEVE J. COURTNEY, Plaintiff-Appellee, v. ST. JOSEPH HOSPI-
TAL, Defendant-Appellant.

First District (5th Division)   No. 86—0358

Opinion filed November 7, 1986.

Peterson, Ross, Schloerb & Seidel, of Chicago (James D. Wangelin and Theodore T. Schuld, of counsel), for appellant.

Thomas Leahy, of Leahy & Donovan, of Chicago (David A. Novoselsky and Kathleen M. Krist, of counsel), for appellee.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is a permissive interlocutory appeal pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308). The question presented for our review is whether Illinois recognizes a cause of action "for emotional distress arising from the negligent mishandling of a corpse."

Plaintiff's action against defendant alleged that it was negligent in failing to preserve the body of her deceased husband in a condition suitable for an open casket wake and funeral following his death. The body decomposed when the refrigeration unit in the hospital morgue malfunctioned. Plaintiff has acknowledged that she is seeking dam-

ages solely for "emotional anguish" which did not result in physical injury or illness. The circuit court denied defendant's motion to dismiss the complaint for failure to state a cause of action and subsequently made the finding necessary for discretionary review under Supreme Court Rule 308 (87 Ill. 2d R. 308). The question of law identified by the court is whether Illinois recognizes a cause of action for "emotional distress arising from the negligent mishandling of a corpse."

OPINION

In *Mensinger v. O'Hara* (1914), 189 Ill. App. 48, plaintiff, the husband of the deceased, sued defendants, two undertakers and their assistant, to recover damages for mental suffering allegedly caused when defendants, without plaintiff's knowledge or consent, cut off and removed the hair from the head of the deceased, thereby rendering her body unfit to be viewed prior to burial. The circuit court dismissed the complaint and plaintiff appealed.

On review, the court observed that although a dead body is not considered as property, "the law does recognize a right *** arising out of the duty of the nearest relatives of the deceased to bury their dead, which authorizes and requires them to take possession and control of the dead body for the purpose of giving it a decent burial." (*Mensinger v. O'Hara* (1914), 189 Ill. App. 48, 53-54. See also *Leno v. St. Joseph Hospital* (1973), 55 Ill. 2d 114, 117, 302 N.E.2d 58.) "This right," the court continued, "is an exclusive right to the custody and possession of the remains, and in the absence of any testamentary disposition, belongs to the surviving husband or wife, if any, or if there be none, then to the next of kin." (*Mensinger v. O'Hara* (1914), 189 Ill. App. 48, 54.) The court held that "any wilful or wanton infringement of this recognized legal right, by the intentional mutilation of the body of the deceased, will subject the wrongdoer to an action on the case for damages, and *** in such action damages will be allowed for any mental suffering proximately resulting from the wrongful act, even though no actual pecuniary loss be alleged or proved." (189 Ill. App. 48, 54. Accord, *Palenzke v. Bruning* (1900), 98 Ill. App. 644.) Construing the averments in the complaint as having alleged an intentional act, the court in *Mensinger* found that plaintiff had stated a cause of action, reversed the order of dismissal and remanded for further proceedings. The court expressly declined to decide whether recovery may be had for mental suffering alone, in the absence of any allegation or proof of wilful or wanton misconduct. *Mensinger v. O'Hara* (1914), 189 Ill. App. 48, 54-57.

Our research has not disclosed any Illinois case in which a cause of action for mental distress caused by the negligent mishandling of a corpse has been recognized. "Courts generally have been reluctant to allow recovery for purely mental or emotional distress." (*Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 555, 457 N.E.2d 1.) According to *Rickey*, "courts have given as reasons for this reluctance apprehensions that the door would be opened for fraudulent claims, that damages would be difficult to ascertain and measure, that emotional injuries are hardly foreseeable and that frivolous litigation would be encouraged." (98 Ill. 2d 546, 555, 457 N.E.2d 1.) However, we seriously question whether these apprehensions are well founded where the mishandling of a corpse is concerned.

In their treatise on the law of torts, Prosser and Keeton note that although "the traditional rule has denied recovery for mere negligence [in the handling of corpses], without circumstances of aggravation, *** [t]here are by now *** a series of cases allowing recovery for negligent embalming, negligent shipment, running over the body, and the like, without such circumstances of aggravation." (W. Prosser & W. Keeton, Torts, at 362 (5th ed. 1984).)[1] This also represents the position taken in the Restatement (Second) of Torts.[2] "What all of these cases appear to have in common," Prosser and Keeton explain, is "an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." W. Prosser & W. Keeton, Torts, at 362 (5th ed. 1984).

---

[1]To the cases cited in the notes to Prosser and Keeton's text can be added the following decisions: *Allinger v. Kell* (1981), 102 Mich. App. 798, 808, 302 N.W.2d 576, 579, *modified on appeal* (1981), 411 Mich. 1053, 309 N.W.2d 547; *Thompson v. Duncan Bros. Funeral Homes, Inc.* (1982), 116 Misc. 227, 455 N.Y.S.2d 324; *Dumouchelle v. Duke University* (1984), 69 N. C. App. 471, 474, 317 S.E.2d 100, 102-03; *Whitehair v. Highland Memory Gardens, Inc.* (W. Va. 1985), 327 S.E.2d 438. *Contra: Dean v. Chapman* (Okla. 1976), 556 P.2d 257; *Papieves v. Kelly* (1970), 437 Pa. 373, 379, 263 A.2d 118, 121.

[2]"One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body." (Restatement (Second) of Torts sec. 868 (1979).) The official commentary notes that in practice "the technical right [of control of the body] has served as a mere peg upon which to hang damages for the mental distress inflicted upon the survivor," and that in reality "the cause of action has been exclusively one for the mental distress." Under the rule set forth in section 868, "[t]here is no need to show physical consequences of the mental distress." The rule "applies not only to an intentional interference with the body itself or with its proper burial or cremation, but also to an interference that is reckless or merely negligent."

In view of the "special circumstances" to which Prosser and Keeton refer, we do not believe that recognizing a cause of action for the negligent mishandling of a corpse would open the door for fraudulent claims or encourage frivolous litigation. Moreover, the emotional injuries caused thereby are "highly foreseeable." (*Allen v. Jones* (1980), 104 Cal. App. 3d 207, 214, 163 Cal. Rptr. 445, 450.) Furthermore, although damages for emotional distress may be difficult to ascertain and measure, we note that in recognizing a cause of action for the intentional infliction of mental distress, our supreme court, in *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157, observed that "[i]t is equally difficult *** to compute the money value of pain and suffering for which damages are allowed by juries each day in personal injury actions, and mental suffering has been recognized in this State as an element of compensable damage in actions for defamation [citations], for malicious prosecution in aggravated cases [citation], and for assault [citation]." 22 Ill. 2d 73, 84, 174 N.E.2d 157.

Were we writing on a clean slate, we would be inclined to permit the complaint in this case to stand. However, we believe that recognition of plaintiff's cause of action is foreclosed by our supreme court's decision in *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 457 N.E.2d 1.

In *Rickey*, the eight-year-old plaintiff sought damages for the emotional distress he suffered as a result of witnessing his younger brother's near strangulation by an article of clothing which became entangled in the defendant's escalator. In reviewing this claim, the supreme court noted that in Illinois "recovery for negligently caused emotional distress suffered by the direct victim or by a bystander who witnesses the injury of another has been consistently denied unless it was accompanied by a contemporaneous physical injury to or impact on the plaintiff." (*Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 550, 457 N.E.2d 1.) The court stated further that "[t]he underlying question is *** whether any person who suffers emotional distress can recover, but the question here specifically is whether a bystander at the injury of another who, generally under the decisions, is a close relative of the bystander can recover." 98 Ill. 2d 546, 553, 475 N.E.2d 1.

In *Rickey*, the court recognized a limited exception to the "impact rule" wherein "a bystander who is in a zone of physical danger and who, because of the defendant's negligence, has reasonable fear for his own safety is given a right of action for physical injury or illness resulting from emotional distress." (*Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 555, 457 N.E.2d 1.) Plaintiff concedes

that she was not within a "zone of physical danger" causing her to fear for her own safety and that she did not suffer physical injury or illness as a result of her emotional distress upon learning that her husband's body had decomposed and could not be viewed. Nevertheless, plaintiff contends that *Rickey* does not bar her action because the "zone of physical danger" test cannot and should not be applied to the facts of this case, she was the direct victim of defendant's alleged negligence, not a bystander, and the injury she sustained (emotional distress) was foreseeable. We disagree.

■ Initially, we note that the "zone of physical danger" test adopted in *Rickey* represents an exception to the "impact rule." This exception has been strictly construed. (*Siemieniec v. Lutheran General Hospital* (1985), 134 Ill. App. 3d 823, 830-31, 480 N.E.2d 1227, *appeal allowed* (1985), 108 Ill. 2d 589 (negligent infliction of emotional distress claim in wrongful-birth action rejected where plaintiffs, parents of a hemophiliac child, could not satisfy the *Rickey* requirement that they were in a zone of physical danger and had reasonable fear for their own safety); *Maere v. Churchill* (1983), 116 Ill. App. 3d 939, 944-45, 452 N.E.2d 694 (*Rickey* exception to the "impact rule" was not broad enough to permit recovery for the emotional distress allegedly caused by the negligence of defendants in performing legal services for the plaintiffs).) Indeed, trial courts have been cautioned to limit claims of negligent infliction of emotional distress to those that closely adhere to the rule enunciated in *Rickey*. (See *Lewis v. Westinghouse Electric Corp.* (1985), 139 Ill. App. 3d 634, 637, 487 N.E.2d 1071.) Two recent decisions illustrate this limitation.

In *Gihring v. Butcher* (1985), 138 Ill. App. 3d 976, 487 N.E.2d 75, the plaintiff found her husband, who had committed suicide, dead in their garage. In her action for negligent infliction of emotional distress, plaintiff claimed that her husband's suicide was the result of medical malpractice by the defendant doctors with whom her husband had consulted.

In affirming the dismissal of the action, the court stated that under *Rickey*, to plead successfully a cause of action for negligent infliction of emotional distress, the plaintiff must allege that defendant's negligence put him or her in reasonable fear for his or her own personal safety. (*Gihring v. Butcher* (1985), 138 Ill. App. 3d 976, 979, 487 N.E.2d 75.) The plaintiff in *Gihring* failed to make this allegation and the court rejected her invitation "to carve out an exception to *Rickey* for malpractice cases," finding "no basis in the language of *Rickey* which would support the establishment of that exception," and noting that "no such exception has thus far been applied." 138 Ill. App. 3d

976, 979, 487 N.E.2d 75.

In *Johnston v. St. Anne's Hospital West, Inc.* (1986), 146 Ill. App. 3d 763, plaintiffs, decedent's wife and daughter, discovered decedent's body in defendants' hospital room. Prior to entering the room they had not been advised of his death. In count V of their six-count amended complaint, plaintiffs sought damages for negligent infliction of emotional distress, asserting that defendants had failed to advise them of decedent's acute condition and of his death upon their arrival at the hospital. The court affirmed the dismissal of count V, stating that although plaintiffs might have been able to demonstrate that they had suffered the physical injury or illness referred to in *Rickey*, they could not have shown that they were in a zone of physical danger and had reasonable fear for their own safety. (146 Ill. App. 3d 763, 765.) The court noted that plaintiffs had not witnessed any accident or injury to the deceased and had not been placed in a zone of physical danger causing them to fear for their own personal safety when they discovered the body. 146 Ill. App. 3d 763, 765.

As in *Gihring*, the court in *Johnston* declined plaintiffs' invitation to expand *Rickey* by recognizing a cause of action for negligent infliction of emotional distress under circumstances where a hospital has failed to inform promptly a patient's relatives of his death. *Johnston v. St. Anne's Hospital West, Inc.* (1986), 146 Ill. App. 3d 763, 765.

■ It is apparent from a review of the foregoing authorities that plaintiff has failed to state a cause of action for the negligent infliction of emotional distress. She has not alleged that she was placed within a zone of physical danger causing her to fear for her own safety when she discovered that her husband's body had decomposed and could not be viewed. Nor has she claimed that she suffered physical injury or illness as a result of her emotional distress. Plaintiff, however, argues that these requirements apply only to bystanders and not also to direct victims of negligence and submits that the mishandling of her husband's corpse constituted a tort committed directly upon her. Again, we must disagree.

Notwithstanding the supreme court's reference to the plaintiff in *Rickey* as a "bystander," it has been correctly observed that "the nature of the zone-of-physical-danger rule is such that it allows recovery only to direct victims of negligence, because recovery must be predicated on a reasonable fear for one's own safety." (Note, *Rickey v. Chicago Transit Authority: Consistent Limitation on Recovery for Negligent Infliction of Emotional Distress in Illinois*, 17 J. Marshall L. Rev. 563, 582-83 (1984).) Under the zone-of-physical-danger standard, the proper focus is on whether plaintiff was in proximity to the

danger, not whether he witnessed an accident to a third person. (*Lewis v. Westinghouse Electric Corp.* (1985), 139 Ill. App. 3d 634, 637-38, 487 N.E.2d 1071.) Accordingly, we reject plaintiff's argument that the requirements for recovery under *Rickey* do not apply to direct victims of negligence.

Finally, plaintiff contends that the "zone of physical danger" test adopted in *Rickey* is merely a test to ensure that any recovery for negligent infliction of emotional distress is limited to foreseeable distress (accompanied by definite damages). Plaintiff argues, in effect, that recovery should be allowed in any case where, as here, the defendant reasonably could have foreseen that his negligence would cause emotional distress. We note, however, that this interpretation of *Rickey* has been rejected as "untenable." See *Gihring v. Butcher* (1985), 138 Ill. App. 3d 976, 978, 487 N.E.2d 75; *Johnston v. St. Anne's Hospital West, Inc.* (1986), 146 Ill. App. 3d 763, 766.

Where there is no contemporaneous physical injury to or impact on him, a plaintiff seeking damages for the negligent infliction of emotional distress must allege both that he was in a zone of physical danger causing him to fear for his own safety and that he suffered physical injury or illness as a result of his emotional distress. Plaintiff has alleged neither. Accordingly, we conclude that her complaint should have been dismissed. In response to the question of law identified by the circuit court, we hold that Illinois does not recognize a cause of action for emotional distress arising from the negligent mishandling of a corpse.

For the foregoing reasons, the order denying defendant's motion to dismiss plaintiff's complaint is reversed and the cause is remanded to the circuit court with directions to dismiss the complaint.

Reversed and remanded with directions.

MURRAY and PINCHAM, JJ., concur.