CAROLINE A. HAMMOND, Plaintiff-Appellee, v. CHARLES E. LANE, Defendant (The Irene Josselyn Clinic, Defendant-Appellant).

First District (5th Division)   No. 85—1326

■

Opinion filed September 30, 1987.

18

PINCHAM, J., specially concurring.

Wildman, Harrold, Allen & Dixon, of Chicago (Douglas L. Prochnow and Sharon R. Gromer, of counsel), for appellant.

Patricia C. Bobb & Associates, of Chicago (Patricia C. Bobb and Kathryn A. Bettasso, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Defendant appeals the denial of its motion to dismiss under Supreme Court Rule 308(a) (87 Ill. 2d R. 308).

We reverse and remand.

On March 6, 1985, plaintiff filed a single count second-amended complaint against Dr. Charles Lane and the Irene Josselyn Clinic. In her complaint plaintiff alleges that Dr. Lane treated her for certain psychiatric and psychological disorders from May 12, 1982, to July 14, 1983. The plaintiff further alleges that during the treatment Dr. Lane had sexual contact with her on four occasions. The second-amended complaint asserts that this contact constituted professional negligence

causing the plaintiff emotional distress which resulted in physical injuries.

On May 1, 1985, the clinic moved to strike and dismiss the complaint on the grounds that it sought recovery for negligent infliction of emotional distress without alleging the elements necessary for such a claim pursuant to *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 457 N.E.2d 1. The plaintiff filed no response. The trial court denied the motion. However, the following question of law was certified by the trial court as the basis for this Rule 308 appeal:

"Whether the second amended complaint properly states a cause of action for the negligent infliction of emotional distress according to *Rickey v. C.T.A.*"

OPINION

■■ The terms of Rule 308 provide an exception to the general rule that an appeal may be taken only from final judgments of the circuit court. (87 Ill. 2d R. 308(a).) The supreme court has indicated that such appeals are to be allowed only in exceptional circumstances and as such should be strictly construed and sparingly exercised. (See *People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527, 387 N.E.2d 325.) Of more import to this cause is the rule that an appeal pursuant to Rule 308 should be limited to the question certified by the trial court. (*People v. Pollution Control Board* (1984), 129 Ill. App. 3d 958, 473 N.E.2d 452.) We are without jurisdiction to entertain matters outside the scope of the certified question because all review by this court is limited by supreme court rule to final orders and certain interlocutory appeals specified in those rules. (*Getto v. City of Chicago* (1981), 92 Ill. App. 3d 1045, 416 N.E.2d 1110.) This court cannot, therefore, expand upon the questions properly brought before us by the trial court in order to answer other matters which could have been included. *Potter v. Chicago Heights Motor Freight, Inc.* (1979), 78 Ill. App. 3d 676, 396 N.E.2d 1366.

■■ Inexplicably, plaintiff has devoted almost her entire brief to addressing an issue which we have no jurisdiction to consider, whether a cause of action for medical malpractice has been properly pled. Even more inexplicably, the special concurrence has embraced this argument. We are confined to the issue of whether plaintiff has properly pled a cause of action for the negligent infliction of emotional distress.

Plaintiff argues, in effect, that recovery should be allowed in any case where, as here, the defendants reasonably could have foreseen that their negligence would cause emotional distress. This interpreta-

tion of *Rickey,* however, has been rejected as "untenable." See *Gihring v. Butcher* (1985), 138 Ill. App. 3d 987, 487 N.E.2d 75.

■■ ■ To plead successfully a cause of action for negligent infliction of emotional distress, plaintiff must allege that defendant's negligence put her in reasonable fear for her own personal safety. (*Gihring v. Butcher* (1985), 138 Ill. App. 3d 976, 487 N.E.2d 75.) Although plaintiff arguably has alleged that she suffered the "physical injury or illness" referred to in *Rickey,* she has not alleged that she was "in a zone of danger and had reasonable fear for her safety." (See *Johnston v. St. Anne's Hospital West, Inc.* (1986), 146 Ill. App. 3d 763, 497 N.E.2d 408.) Since plaintiff has not met the threshold requirement of *Rickey,* the trial court improperly denied defendant's motion to dismiss.

Our supreme court has recently reaffirmed the established principles of *Rickey.* (See *Siemieniec v. Lutheran General Hospital* (1987), 117 Ill. 2d 230.) There, in her complaint plaintiff alleged that she became pregnant in February of 1980 and was concerned about the possibility of her child's being born with hemophilia, a genetic disorder, because two of her cousins were afflicted with it. Plaintiff consulted with defendants-doctors with regard to her concerns. She was told the risk of her being a hemophilia carrier was "very low." Her child was born in October of 1980 and was diagnosed shortly thereafter as a hemophiliac. The complaint alleged that because the defendants were negligent in their diagnosis, Adam was not aborted and the Siemieniecs suffered injury. The supreme court stated that *Rickey* adopted the zone-of-danger rule regarding recovery for emotional distress, which requires that before a plaintiff can recover he must have, himself, been endangered by the negligence and have demonstrated manifestations of physical injuries as a result of the emotional distress caused by defendant's negligence. The court stated further:

> "There are no allegations in the complaint from which it can be said that the defendants' alleged negligence in any way endangered the parents of the impaired child."

The court, in finding that plaintiff failed to state a cause of action for negligent infliction of emotional distress, stated that they were not inclined to expand the right to recover for emotional distress.

Similarly, the plaintiff here has failed to allege that she was in any way endangered or in any way feared for her safety. Consequently, to answer the certified question, plaintiff has not successfully pled a cause of action for negligent infliction of emotional distress.

Accordingly, for the reasons set forth in this opinion we reverse and remand.

Reversed and remanded.

SULLIVAN, P.J., concurs.

JUSTICE PINCHAM, specially concurring:
Plaintiffs asserted in the trial court that plaintiff did not attempt to allege a cause of action for the negligent infliction of emotional distress and, accordingly, *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 457 N.E.2d 1, did not apply to plaintiff's alleged cause of action in her second amended complaint. I agree with plaintiff's contention. Because I fear that a simple "no" answer to the question certified to this court could be misconstrued as a basis for dismissing plaintiff's complaint, as urged by the defendant, I specially concur.

Plaintiff, Caroline A. Hammond, filed an action against defendants, Dr. Charles E. Lane and the Irene Josselyn Clinic (the clinic). In plaintiff's second amended complaint plaintiff alleged that she was treated as an out-patient at the clinic for psychiatric and psychological disorders by the defendant, Dr. Lane, a psychologist, therapist and counselor, from May 12, 1982, to July 14, 1983, and that as part of his treatment and care of plaintiff, Dr. Lane had sexual contacts with plaintiff on at least four occasions. Plaintiff further alleged that defendants were guilty of negligence in that they failed to use proper and ethical techniques of psychiatric therapy. Plaintiff's second amended complaint further alleged:

"7. The aforesaid conduct of [Dr.] Lane and the clinic, and each of them, constituted a substantial deviation from the accepted standard of care as practiced by reasonably well qualified psychologists, therapists and psychiatric clinics under the same or similar circumstances.

8. As a proximate result of one or more of the aforesaid negligent acts or omission by [Dr.] Lane and the clinic, and each of them, *[plaintiff] Hammond sustained damages of a personal and pecuniary nature, including psychological, emotional and physical injuries, including insomnia, nausea, recurrent acute gastritis and irritable colon syndrome.*"
(Emphasis added.)

The clinic filed a motion to dismiss plaintiff's second amended complaint. The clinic's dismissal motion asserted that negligent psychotherapy "does not directly cause" the medical problems of which plaintiff complains but that negligent psychotherapy may cause emotional distress which, in turn, causes those problems. The clinic's dismissal motion alleged:

"[T]he plaintiff's amended complaint seeks damages for the negligent infliction of emotional distress. The seminal case on the negligent infliction of emotional distress is, of course, *Rickey v. C.T.A.*, 98 Ill. 2d 546, 457 N.E.2d 1 (1983).

The *Rickey* court adopted what has been described as the zone of physical danger rule."

The clinic argued that to plead a proper cause of action for the negligent infliction of emotional distress, plaintiff must allege that the negligent act complained of gave her a reasonable fear for her own safety. Because plaintiff did not make such allegation, the clinic urged to the trial court, plaintiff's second amended complaint failed to state a cause of action for the negligent infliction of emotional distress and should be dismissed.

The clinic's dismissal motion was predicated on the clinic's expressed assumption that plaintiff's second amended complaint sought damages for the negligent infliction of emotional distress. On this assumption the clinic then proceeded to argue that plaintiff's second amended complaint failed to properly allege a cause of action for the negligent infliction of emotional distress because plaintiff did not allege that the act of which she complained gave her a reasonable fear for her own safety as required by *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 457 N.E.2d 1.

The trial court denied the clinic's motion to dismiss plaintiff's second amended complaint. In certifying the following question to this court, it appears that the trial court accepted the clinic's assumption that plaintiff's second amended complaint sought damages for the negligent infliction of emotional distress. The question certified by the trial court to this court is:

"Whether the second amended complaint properly states a cause of action for the negligent infliction of emotional distress according to *Rickey v. C.T.A.*"

The trial court's order further provided, however, that plaintiff did not waive her contention that *Rickey* did not apply to plaintiff's second amended complaint.

I do not accept the clinic's assumption that plaintiff's second amended complaint sought damages for the negligent infliction of emotional distress. Thus, the prerequisite threshold question presented by the certified question from the trial court to us is whether *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 457 N.E.2d 1, is applicable to the allegations of plaintiff's second amended complaint. Plaintiff alleged that she "sustained damages of a personal and pecuniary nature, including psychological, emotional and *physical injuries, in-*

*cluding insomnia, nausea, recurrent acute gastritis and irritable colon syndrome."* (Emphasis added.) Plaintiff thereby alleged that the physical injuries she suffered were insomnia, nausea, acute gastritis and irritable colon syndrome. Plaintiff did not allege that these physical injuries were emotional injuries or were caused by emotional distress. An analysis of *Rickey* and *Rickey's* progenies clearly reveals that *Rickey* is inapplicable to plaintiff's allegations of physical injuries.

In *Rickey*, Robert Rickey, the eight-year-old plaintiff, brought an action to recover damages for his emotional distress allegedly caused when he saw his five-year-old brother, Richard, being choked on his clothing which had become entangled in an escalator. Because Richard was unable to breathe for a substantial period of time, a comatose condition developed and Richard was in a coma for eight years after the accident and when the complaint was filed. Robert Rickey did not allege that he suffered any impact or injury at the time and did not allege that he was in danger of harm. Robert Rickey's complaint did allege, however, that as a result of Rickey's witnessing the accident and the injury to his younger brother, Rickey sustained mental and emotional distress and psychiatric trauma. Rickey further alleged in his complaint that the emotional distress became manifest in physical injury, including *"definite functional, emotional, psychiatric and behavioral disorders, extreme depression, prolonged and continuing mental disturbance, inability to attend school and engage in gainful employment and to engage in his usual customary affairs."* (Emphasis added.)

The emotional distress allegations of *psychiatric* and *behavioral disorders, depression, mental disturbance,* and inability to attend school and engage in gainful employment and customary affairs of *Rickey* are quite different from the physical injury allegations of *insomnia, nausea, acute gastritis* and *irritable colon syndrome* of the case at bar.

The supreme court pointed out in *Rickey* that recovery for negligently inflicted emotional distress experienced by the direct victim or by a bystander who observes the injury inflicted on another has been consistently refused unless it was accompanied by a contemporaneous physical injury to or impact on the plaintiff and that courts have been reluctant to allow recovery for purely mental or emotional distress. (98 Ill. 2d 546, 550, 555, 457 N.E.2d 1.) The supreme court further pointed out in *Rickey* that the "impact rule" requires a contemporaneous physical injury or impact to permit recovery by a bystander for emotional distress, but that because courts found the impact requirement satisfied from minor physical contacts which caused slight or no

physical harm to the plaintiff, the requirement of "impact" became a mere formality, satisfied by a slight jolt or jar. (98 Ill. 2d 546, 553, 457 N.E.2d 1.) The supreme court concluded that recovery for emotional distress caused by another's negligence should not be determined solely by whether there was a contemporaneous and physical impact upon Robert Rickey, and the court abandoned the requirement of contemporaneous injury or impact for a bystander's recovery for emotional distress and held:

> "The standard that we substitute for the one requiring contemporaneous injury or impact is the standard which has been adopted in the majority of jurisdictions where this question of recovery by a bystander for emotional distress has been examined. [Citations.] That standard has been described as the zone-of-physical-danger rule. Basically, under it a bystander who is in a zone of physical danger and who, because of the defendant's negligence, has reasonable fear for his own safety is given a right of action for physical injury or illness resulting from emotional distress. This rule does not require that the bystander suffer a physical impact or injury at the time of the negligent act, but it does require that he must have been in such proximity to the accident in which the direct victim was physically injured that there was a high risk to him of physical impact. The bystander, as stated, must show physical injury or illness as a result of the emotional distress caused by the defendant's negligence." 98 Ill. 2d 546, 555, 457 N.E.2d 1.

Unable to determine from the complaint in *Rickey* the location of Robert Rickey in relation to the escalator when his brother was injured thereon, or whether Robert Rickey was endangered by the defendant's alleged negligence, or whether Robert Rickey had reasonable fear for his own safety, causing emotional distress, the supreme court remanded *Rickey*, with directions to the trial court, so that Robert Rickey could plead again, inasmuch as his complaint was not drafted under the supreme court's newly announced standards in *Rickey*.

In *Goldberg v. Ruskin* (1984), 128 Ill. App. 3d 1029, 471 N.E.2d 530, a medical malpractice action was filed against Stephen Ruskin, a licensed physician and surgeon who specialized in obstetrics and gynecology, and Straus Surgical Group by the parents of a child who suffered from Tay-Sachs disease, a fatal, progressive, degenerative disease of the nervous system which occurs primarily in Jewish infants of Eastern European ancestry. At four to six months of age, the child's central nervous system begins to degenerate and the child suf-

fers eventual blindness, deafness, paralysis, seizures, and mental retardation. The life expectancy of such a child is two to four years. The Goldbergs alleged they suffered emotional distress as the result of seeing and caring for their child while his condition degenerated into death and that their emotional distress was a direct and proximate result of the defendants' negligence. The defendants' negligence, plaintiffs alleged, was the defendants' knowledge of Tay-Sachs disease, that there was no known treatment, that the disease was terminal, that a simple prenatal testing procedure was available and in general use within the medical community to determine whether a baby would be born with the disease, that defendants did not perform the test and did not inform plaintiffs of the test or of the disease, that defendants failed to inform plaintiffs of the risk of the disease and that had plaintiffs been informed they would have caused the child to be aborted. Plaintiffs, however, did not allege that they suffered any physical injury or illness and the trial court dismissed plaintiffs' complaint. The court stated in *Goldberg*:

> "While our supreme court in *Rickey* eliminated the requirement of contemporaneous physical injury or impact, it gave no indication that it intended that a plaintiff, whether the direct victim of negligence or a bystander, should be able to recover damages for negligently caused emotional distress where the emotional distress is not accompanied by physical injury or illness. From our reading of the opinion in *Rickey*, we believe that physical injury or illness must be established in order for a plaintiff to recover for negligently caused emotional distress, regardless of whether the plaintiff was the direct victim or a bystander. As noted, Mr. and Mrs. Goldberg do not allege that they suffered any physical injury or illness." 128 Ill. App. 3d 1029, 1043, 471 N.E.2d 530.

Again, in the case at bar, unlike in *Goldberg* and *Rickey*, plaintiff alleged that she suffered "physical injuries [and illness]," to wit: "insomnia, nausea, recurrent acute gastritis and irritable colon syndrome."

In *Goldberg*, the court pointed out that the amended complaint was not drawn at a time when the *Rickey* standards governed and the court remanded the cause to the trial court for plaintiffs to be given an opportunity to replead facts which would entitle them to recover damages for emotional distress under the standards announced in *Rickey*.

In *Siemieniec v. Lutheran General Hospital* (1985), 134 Ill. App. 3d 823, 480 N.E.2d 1227, Mrs. Janice Siemieniec became pregnant

and was concerned about the possibility of her baby's being born with hemophilia. She and her husband, Thomas, consulted with defendants-physicians, who assured them that the possibility of their child's being born with hemophilia was "low risk." Their child was subsequently born with the disease. The Siemieniecs brought suit individually and on behalf of their son against the defendant-hospital and two physicians. They alleged that defendants were under a duty to render competent diagnostic and consultative services which duty was breached by defendants' failure to inform plaintiffs about hemophilia and by defendants' failure to adequately inquire into plaintiffs' own health background. Plaintiffs sought, *inter alia,* recovery from defendants for their emotional distress for the birth and caring for their hemophilic infant. The trial court denied defendants' motion to dismiss plaintiffs' complaint, but pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308) the trial court certified to this court for review three questions, one of which was whether plaintiffs as parents had a cause of action against the defendants for negligent infliction of emotional distress. This court held:

> "Plaintiffs here also assert a cause of action for negligent infliction of emotional distress. Defendants maintain that such an action has no basis in Illinois and they note that case law historically has barred recovery for negligent infliction of emotional distress unless there was a contemporaneous physical impact or injury suffered by plaintiff. [Citations.] There is a limited exception to this 'impact rule' recently recognized by our supreme court, and cited by both parties to this appeal, wherein a bystander 'who is in a zone of physical danger and who, because of the defendant's negligence, has reasonable fear for his own safety is given a right of action for physical injury or illness resulting from emotional distress.' (*Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 555, 457 N.E.2d 1.) Subsequent cases have strictly construed this exception. [Citation.] Other jurisdictions have both rejected emotional distress claims in wrongful-birth actions [citations] and have allowed such recovery. [Citations.]
>
> We believe that *Rickey* is controlling in a negligence setting. Although it is conceivable that Janice and Thomas could formulate a cause of action for 'physical injury or illness' referred to in *Rickey* \*\*\*, we are unable to perceive, under the facts of this case, how they can satisfy the preceding requirement of the *Rickey* rule, namely, that they were 'in a zone of physical danger and \*\*\* [had] reasonable fear for \*\*\* [their] own safety

***.' (98 Ill. 2d 546, 555 [,457 N.E.2d 1].) It is true that plaintiff's presence in a zone of physical danger was not required in *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157; but there, the circumstances involved an intentional infliction of emotional distress, rather than mental distress caused by another's negligence as here, and the intentional conduct was extreme and outrageous, unlike the facts alleged in this case. [Citation.]

Accordingly, we must hold in answer to certified question No. 2 that, absent allegations and proof of intentional and outrageous conduct, or that plaintiffs were at high risk to themselves of physical impact resulting in their physical injury or illness by reason of the emotional distress caused by a defendant's negligence, they have no cause of action for emotional distress damages." 134 Ill. App. 3d 823, 830-31, 480 N.E.2d 1227.

The supreme court granted the defendants in *Siemieniec* leave to appeal and reiterated that "under the holding of *Rickey*, before a plaintiff can recover for negligently caused emotional distress, he must have, himself, been endangered by the negligence and he must have suffered physical injury or illness as a result of the emotional distress caused by the defendants' negligence." (*Siemieniec v. Lutheran General Hospital* (1987), 117 Ill. 2d 230.) The supreme court concluded in *Siemieniec* that the Siemieniecs' complaint did not allege that the defendants' negligence endangered the parents of the afflicted child or that the parents had or would suffer any physical injury or illness resulting from the emotional distress allegedly caused by the defendants' negligence and affirmed the appellate court's judgment that the parents did not allege a cause of action for emotional distress negligently inflicted by the defendants.

Plaintiff's complaint in *Gihring v. Butcher* (1985), 138 Ill. App. 3d 976, 487 N.E.2d 75, alleged that her husband consulted with the defendant, their family physician, for depression. Nine days later plaintiff's husband committed suicide by carbon monoxide poisoning in the garage of their home, where plaintiff found her deceased husband. Plaintiff's complaint further alleged that her husband committed suicide as a result of the defendant doctor's medical malpractice. Unlike in the case at bar, in *Gihring* plaintiff only alleged that she suffered "great emotional distress" from finding her husband dead in the garage. The trial court dismissed plaintiff's complaint. This court affirmed, stating:

"[W]e conclude that the zone of physical danger rule as applied

by our supreme court in *Rickey* requires that the plaintiff allege that the defendant's negligence put plaintiff in reasonable fear for his/her own personal safety to successfully plead a cause of action for negligent infliction of emotional distress." 138 Ill. App. 3d 976, 979, 487 N.E.2d 75.

The trial court dismissed plaintiff's complaint in *Johnston v. St. Anne's Hospital West, Inc.* (1986), 146 Ill. App. 3d 763, 497 N.E.2d 408, for the defendant's alleged negligent infliction of emotional distress upon plaintiff. Plaintiff's husband was admitted to the defendant hospital, where plaintiff was told by a doctor that her husband would be all right and that he was in no immediate danger. Plaintiff returned to the hospital the next day and without any notice found her husband dead in his hospital bed. As a result plaintiff alleged that she suffered " 'strain and extraordinary mental distress, emotional distress and mental anguish.' " (146 Ill. App. 3d 763, 764, 497 N.E.2d 408.) It should be again noted that in the case at bar plaintiff alleged that she was physically injured. In affirming the dismissal of this count of plaintiff's complaint in *Johnston,* the court held:

"The allegations in count V of plaintiffs' complaint fail to satisfy the *Rickey* test. Although plaintiffs may be able to demonstrate that they suffered the 'physical injury or illness' referred to in *Rickey*, they cannot show that they were 'in a zone of physical danger and *** [had] reasonable fear for [their] safety.' First, plaintiffs did not witness any accident or injury to Mr. Johnston. He had been dead for quite some time before plaintiffs entered his hospital room and found him. Second, plaintiffs were not placed in a zone of physical danger causing them to fear for their own personal safety when they discovered Mr. Johnston after he was already deceased. Therefore, since plaintiffs cannot meet the threshold elements of *Rickey*, the trial court properly dismissed count V." 146 Ill. App. 3d 763, 765, 497 N.E.2d 408.

In *Alexander v. DePaepe* (1986), 148 Ill. App. 3d 831, 499 N.E.2d 1065, the car driven by plaintiff's fiance and in which plaintiff was a passenger collided with a car driven by the defendant, which resulted in injuries to plaintiff and the death of her fiance. Count II of plaintiff's complaint alleged that she suffered from emotional distress from witnessing the fatal injuries to her fiance in the collision, allegedly caused by the defendant's negligence. In affirming the trial court's dismissal of count II of plaintiff's complaint, this court pointed out that *Rickey* did not create a new cause of action, but instead extended an existing cause of action beyond those bystanders who suf-

fered some physical impact to those bystanders who were put at great risk by defendants' negligence and that *Rickey* did not support a cause of action for negligent infliction of emotional distress based only on witnessing an injury to a direct victim. The court further pointed out in *Alexander* that the bystander's cause of action arose only when he alleged that his emotional distress arose from fear for his own well-being and that because Alexander failed to allege that her emotional distress arose from fear for her own safety or from being put at high risk of physical impact, plaintiff's complaint under *Rickey* failed to allege a cause of action and that "no set of facts could be proved by plaintiff under the pleadings which would entitle her to relief." 148 Ill. App. 3d 831, 836, 499 N.E.2d 1065.

In *Courtney v. St. Joseph Hospital* (1986), 149 Ill. App. 3d 397, 500 N.E.2d 703, the plaintiff sought damages for "emotional anguish" and alleged that the defendant was negligent in failing to preserve the body of her deceased husband in a condition suitable for an open casket wake and funeral when the body decomposed after the refrigeration unit in the hospital morgue malfunctioned. We ruled that the plaintiff failed to state a cause of action for the negligent infliction of emotional distress because she did not allege that she was placed within a zone of physical danger causing her to fear for her own safety when she discovered that her husband's body had decomposed and could not be viewed. (149 Ill. App. 3d 397, 402, 500 N.E.2d 703.) We stated:

> "Notwithstanding the supreme court's reference to the plaintiff in *Rickey* as a 'bystander,' it has been correctly observed that 'the nature of the zone-of-physical-danger rule is such that it allows recovery only to direct victims of negligence because recovery must be predicated on a reasonable fear for one's own safety.' [Citation.] Under the zone-of-physical-danger standard, the proper focus is on whether plaintiff was in proximity to the danger, not whether he witnessed an accident to a third person. [Citation.] Accordingly, we reject plaintiff's argument that the requirements for recovery under *Rickey* do not apply to direct victims of negligence.
>
> * * *
>
> Where there is no contemporaneous physical injury to or impact on him, a plaintiff seeking damages for the negligent infliction of emotional distress must allege both that he was in a zone of physical danger causing him to fear for his own safety and that he suffered physical injury or illness as a result of his emotional distress." 149 Ill. App. 3d 402-03, 500 N.E.2d 703.

We concluded in *Courtney* that the plaintiff's complaint should have been dismissed.

Among the cases we cited to support our holding in *Courtney* were *Gihring v. Butcher* (1985), 138 Ill. App. 3d 976, 487 N.E.2d 75, and *Johnston v. St. Anne's Hospital West, Inc.* (1986), 146 Ill. App. 3d 763, 497 N.E.2d 408.

*Courtney, Girhing,* and *Johnston* involved complaints filed by plaintiffs who were bystanders and were not directly involved in the alleged negligent infliction of emotional distress. In the case at bar, it was the victim-patient herself who allegedly suffered physical injury and also emotional distress. To adopt defendant's argument would mean that the *Rickey* standards apply to cases where the direct victim-patient alleges that the doctor and hospital were negligent and that as a result thereof she suffered physical injury and also emotional distress. This position cannot be supported. This is an action brought by the direct victim-patient herself. In *Rickey*, the supreme court pointed out:

"The question presented by the appellate court's judgment is whether a bystander who did not suffer physical injury or impact at the time of the occurrence may recover damages for emotional distress which resulted from witnessing an injury to his brother caused by the defendants' negligence." (*Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 549, 457 N.E.2d 1.)

"The underlying question is, of course, whether any person who suffers emotional distress can recover, but the question here specifically is whether a bystander at the injury of another who, generally under the decisions, is a close relative of the bystander can recover." 98 Ill. 2d 546, 553, 457 N.E.2d 1.

Plaintiff's action in the case at bar is not for emotional distress because she witnessed harm to another. Plaintiff alleged that as a patient she suffered physical injuries and also emotional illness. It was alleged that plaintiff went to defendants as a patient for care and treatment for psychiatric and psychological disorders. Defendant, Dr. Lane, was employed by the defendant clinic as a psychologist, therapist and counselor to treat patients. It was further alleged that Dr. Lane was negligent in that he failed to use proper ethical techniques of psychiatric and psychological therapy and engaged in sexual contacts with plaintiff as part of her treatment. The complaint alleged that there was "substantial deviation [by the defendants] from the accepted standard of care as practiced by reasonably well qualified psychologists, therapists and psychiatric clinics under the same or similar circumstances." Plaintiff's complaint further alleged that as a proxi-

mate result of defendants' said negligence she suffered "damages of a personal and pecuniary nature, including psychological, emotional and physical injuries, including insomnia, nausea, recurrent acute gastritis and irritable colon syndrome."

Thus, in response to the certified question on appeal, "Whether the second amended complaint properly states a cause of action for the negligent infliction of emotional distress according to *Rickey v. C.T.A.*," I agree that the answer is "no" because *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 457 N.E.2d 1, is inapplicable to the allegations of plaintiff's complaint.